The next case, number 22-1027, Mario Cruzado v. Nelson Alves. At this time, would counsel to the appellant please introduce themselves on the record to begin. Good morning, may it please the court. My name is Emma Quinn, judge, and along with my colleague Thomas Miller, I represent Mario Cruzado. I'd like to reserve two minutes for rebuttal. You may. Mr. Cruzado was convicted of first degree murder after a trial that was infused with inflammatory prejudice by the introduction of his use of the N-word. I know there are two issues this court would like to address. Can you start with the jurisdictional question? I was about to ask. I certainly can. So on the jurisdictional issue, I think there are two ways to look at it. One is sort of practical. The habeas rules say there is no final order in a habeas case until there's been a ruling both on the habeas petition and on a certificate of appealability. And so here, the notice of appeal was filed the day that both of those issues were decided, that the second issue was decided on January 4th. And in that situation, if you apply the habeas rules and assume that they mean what they say, then the notice of appeal was not late. It was a timely notice of appeal. Alternately, there's extensive jurisprudence around what is the functional equivalent of a notice of appeal. And the five courts that have looked at it with respect to what's at issue in this case, which is a motion for an extension of time to file a memo in support of a certificate of appealability, four of those five courts have said, of course that's the functional equivalent of a notice of appeal. It meets all the relevant requirements. The only outlier from the Fifth Circuit, Bailey, is a case involving multiple orders in the docket. So there were four orders at issue and a final order. And the Fifth Circuit said, we just can't tell. We can't meet the rules. What do we do with the state of our precedent, which is that we've got a pre-Smith case saying that a motion for extension of time does not qualify as the functional equivalent of a notice of appeal, which is Thomas. Then we've got Campidi saying a motion for counsel in that particular case, given what that motion for counsel said does qualify. Plus a footnote in that case saying we're not sure what the state of Thomas is after Smith. And now we've got here a motion for extension of time again, but not a motion for extension of time to appeal, but a motion of time to file an application for a certificate of appealability. So where are we under a couple of things? One, the law of the circuit. And then two, if the law of the circuit. Do we have a binding precedent under Thomas? I don't think Thomas governs the situation here. And the reason for that is that it's a different document. It's an extension of time to file a notice of appeal. We all know that filing a notice of appeal is not a particularly big ask. It's not a weighty lift. And so if you're equivocating about, if you need more time than 30 days to file that, you may be equivocating about whether to appeal. What if the motion for the notice of appeal, extension for the time for the notice of appeal, says I'm out of the country right now, I just can't get there, and I'm dealing with a health crisis, I want to be back, just give me five extra days? Well, I think in that case you'd be doing the analysis under Rule 3 and under Smith, and it would be a different situation. Does Thomas allow us to say that that would be okay? I think so. I don't think Thomas makes a categorical rule that a notice of appeal is... You don't? I don't, no. I mean, in the circuits that have looked at these, and I also don't think... No, no, not the circuit. Thomas. I'm just trying to figure out under our law, under First Circuit law, do we have an existing holding that a motion for an extension of time for a notice of appeal cannot be the functional equivalent? I think the holding is that the notice in that case cannot be the functional equivalent of a notice of appeal. But the reason I was starting to talk about other circuits that have looked at this is, for example, I was saying Bailey is the one outlier on the situation we have here. That's the Fifth Circuit case, on the situation where you're asking for an extension of time to file the memorandum in support of appealability. But Bailey, in fact, notes that in that circuit they've said, but a notice of appeal is fine, that they have precedence saying that, and a memorandum of a certificate of appealability. So what I'm saying is, I don't think the Thomas situation governs. I don't think if the state of the law in the circuit is that a notice of appeal, a motion for an extension of time on a notice of appeal is viewed one way, that that controls the situation we have here, because you've seen other circuits go different ways on those two issues. Yeah, but I'm just trying to understand the logic of why they're doing it. I understand that lots of things are being done. I'm trying to understand why anyone's doing what they're doing. Right. So I think that's where you go back to two things. You go back to the Rule 3 requirements. And again, you apply those to what's at issue in this case. So here you know who the party is. You know what's being appealed, because there's only one order under appeal. As soon as you put the docket number on there, you know what's being appealed. And you know that it is going to the First Circuit, because there's nowhere else it can go. Do you know that there's an intent to appeal when there's a request for an extension of time? Absolutely. Because, I mean, if you look at, I think it's the D.C. Circuit, and Gooch says, the only reason to seek a certificate of appealability is because you plan to appeal. So self-evidently, that evinces what you need to show to show that you were planning to appeal. Why would you go through the exercise of saying, I'm going to file this memorandum if you aren't planning to appeal? That's where I'm running into Thomas. Well, I think the other issue, and this— You see the logic. Why would I want more time to file the notice of appeal? But Thomas said, because maybe you're thinking about whether to file it. So symmetrically, if that's the case, then why am I asking for more time to file an application for a certificate of appealability? Because maybe I'm thinking about whether to seek the application as opposed to notifying you that I'm filing. But then you look at the motion that's actually filed here. And the motion that's actually filed here says, I have a busy trial schedule. And that's why you say it's important, then, that Thomas not be a categorical rule. I don't think Thomas is a categorical rule. And I think Rule 3, the analysis of Rule 3 and the way it's applied is not a categorical rule. There's an encouragement to deliberately construe it. But in every case I've looked at, the courts go back and look at what's in the actual notice. And here you have trial counsel saying, I have a busy trial schedule. I need a little extra time to prepare the memorandum. She's not saying I'm thinking about it. She's just saying, I need some more time to work on this memorandum. And that's consistent with what you see in some of the other cases, where you have a prisoner saying, I need access to the library. I need a little bit more time to get there. And the other thing that's in this motion. Can I just ask you a practical consequence? In the Clark case, the dissent there raises the concern that if we treat this type of thing as a functional equivalent, we could run into circumstances in which the appeal would have been taken when neither the parties nor the district court realized it had been taken. And therefore, actions that occur in the district court, which it has no jurisdiction to take, will occur. What do you say to that problem? Because that does seem like, practically speaking, what could happen. The party here, it's not evident they thought it was a notice to appeal. The record kind of indicates that they thought it wasn't. It was just a request. Yet we'd be treating it as, at that moment, a notice to appeal, which means at that moment, the district court lost jurisdiction over the case. What do we do about that problem, practically speaking? Well, I think if you go back and look at Smith, Smith says what the appeals court got wrong there was that it looked at the litigant's intent. And the question is, it's a notice question. It's a question of what's evinced on the record. And I don't think the Commonwealth is suggesting here that they didn't know that Mr. Cruzado was appealing or what he was appealing or where he was appealing. So I think there's no notice problem. And as long as there's a notice problem, I don't think there's a problem at all. I mean, that's why you have the functional equivalence doctrine. The Clark dissent, I think, is addressed by cases like Bailey or other cases where there is a more complicated docket, where there are more motions. And the court says, you know, you can't designate two things and then appeal the other three, right? In those cases, there's a different situation. And that's why it seems to me that all of the cases that do this look specifically at what is in the motion itself. And the other thing I want to flag that's in the motion itself here is an underlying reference to the deadline set forth in the order denying habeas. So you have a link back to what order we're talking about. Again, I think those two things get you well into the land of functional equivalence. And there's just no suggestion from the Commonwealth that they didn't have notice. And Smith says this is all about notice. This is all about making sure that everybody has notice. Let me ask you. The rules of civil procedure allow, same as the rules of criminal procedure, allow the district judge to extend the time to appeal also. Why, when the memorandum, the motion for extension of time to file a memorandum was filed, couldn't your client could have filed also a motion for extension of notice appeal, you know, at the same time? That would have probably cured everything. I think that's conceivably possible. I think that the habeas rules and the habeas process trip up even experienced practitioners. And, you know, what counsel below said in the response to the order to show cause from this court was, I didn't think I could file a notice of appeal yet because the habeas statute says you can't appeal under habeas until there's a certificate of appealability. And, again, that's where I go back to what the rules themselves say, which is that there is no final order at that point. You know, the other alternative is she could have filed a notice of appeal right away, not an extension on the time for appeal, but she could have filed a notice of appeal right away. Then the district court wouldn't have had jurisdiction anymore, and then what do you do about the briefing schedule that the district court has set forth on appealability? It's not an easy practical solution, but that's why I think you do have these functional equivalence doctrines that say let's be reasonable, let's make sure rule three is met, let's make sure everybody has notice, and then we can move forward. But what I'm saying is perhaps, you know, maybe I'm being idealistic, but file a motion or extension of time to file memorandums for the certificate of appealability plus told the time for me to file a notice of appeal until you decide on that. That could have been done. That could have been done. I mean, I think other things. And had it been done, it probably would not be an issue at this time. We'd be on the merits right away. Is that right, though? Because I thought the extension that was sought would have been past even the time that you could have gotten for an extension of notice of appeal. I thought there was a limit on how long a notice of appeal can be extended. But the extension of time that was sought was actually only seven days after what would be the outer limit for the notice of appeal. Outer limit? Not the outer limit. For the original deadline. So not the 30-day extension. Correct. Correct. So she asked for a week after the 30 days. She asked for effectively 37 days, and she did that within the 30 days. So she moved within the 30 days. Everybody knew that an appeal was being contemplated, that the work was being done to move forward towards an appeal. So if she had filed a notice of appeal, she could have sought a certificate from the Court of Appeals, correct? Correct, although my understanding from both the local rules and the habeas rules is that the district court needs to decide the issue of appealability in the first instance. And I think I've seen reference, I forget in which of the cases I've seen reference to this court, when that hasn't happened, ordering the district court to go back and decide the appealability issue. So I do think it has to be decided first in the district court. And that's where you end up in this procedural thicket. Moving to the substantive argument. I've read the SJC decision. Why is it contrary to law? That's the big test, though. So, I mean, I think there are a number of things. The statement about federal law, that there's no due process problem because these words came out of the defendant's mouth, that's not the state of law around words that come out of the defendant's mouth. But that requires us to treat the footnote as if it's not a footnote to the text above. I mean, if you read it, if one reads the SJC's opinion, maybe you just say we can't read it this way, but if you read it as saying it's motive-based, and then the footnote is saying, and how could there be a due process problem when, consistent with our motives analysis above, it came out of the own person's mouth? What's wrong with that reading? It seems like we're supposed to read these somewhat generously. Right. And so reading the state court analysis as a proxy for the entire analysis, there are other problems, right? One is that when weighing the state evidentiary claim, the SJC never talks about the degree of unfair prejudice. They skip right over prejudice. So they don't talk about how offensive the N word is. They don't talk about how it's injected into the trial from voir dire to opening to closing. They don't talk about balancing that because they never get to how prejudicial it is. Let me ask you. There was a voir dire, and it was extensive, and the jurors were asked about that just to make sure. Doesn't that, in a sense, cure everything? I think that voir dire problem is actually sort of backwards. It doesn't cure anything because it says, do you have any feelings based on race that would affect your view in this trial? And the question about the defendant using the N word is injected into that. But just to finish answering your question, that question suggests to a juror, do you have any sort of racial prejudice? Do you have any concerns about race? There's a separate question. Do you have concerns about the defendant using that? And so the answers to those two questions are going to be diametrically opposite. I think the voir dire question does the opposite of curing things. And I'll use my rebuttal. I just don't think I fully understood your prejudice point. Is that to the due process argument? Yes, because the reasonableness of the SJC's analysis, I think you have to look at the fact that they skip over prejudice. I think you have this problem with mitigation. I think the problem with motive is that when you look at the case law in which the N word is admitted for motive, it's admitted in the context of something else. It's admitted also for criminal responsibility, for identity. None of the cases that are talked about in the briefs just admit it for motive, except for that old case where we point out they say racial epithets aren't too bad, they're not going to really inflame anyone, which I think you have to set aside. So in terms of looking at the reasonableness of the SJC's analysis as a whole, the fact that you don't have to... Just to be clear, on this aspect we're not on contrary to, we're on unreasonable application? For the whole thing, we're on unreasonable application, right? Because you're looking at the SJC's analysis, but at the end of the day, given the deferential standard of review, you're looking at the outcome. And so I'm saying the outcome here is also contrary to the precedent that's been cited because you don't have cases where it's coming in only for motive. You have cases where it's coming for a specific issue. I'm sorry, just so I understand exactly what you're arguing. I thought there was one argument, which was that it was contrary to law because they simply say that the fact that a statement's coming out of his mouth is alone enough to show there's no due process violation. Or was that meant to be an unreasonable application argument? So this is an issue that comes up because in the briefing below, the heading is contrary to federal law. I'm misstating the standard, but the contrary to prong. And the entire briefing below is about due process. Is this a violation of due process? Is this a violation of due process? We briefed this entirely in terms of an unreasonable application. Was that argument made below? Well, the argument made below was just made in broad due process terms, and the trial court analyzed it in terms of reasonableness. The Commonwealth and its opposition talks about reasonableness. So you're making a reasonableness argument? We're making a reasonableness argument based on Conningford and the cases that follow. Well, are you making reasonableness and contrary to? My understanding is for contrary to, you need to specifically single out an individual Supreme Court precedent that's contrary to, whereas the Conningford, Lyons, Gomes, Jaynes line of case law talks about the broader fair trial principle at play in due process cases. And so following that line of First Circuit's precedent, I think the unreasonable application of federal law is the touchstone. So what was your answer to Judge Thompson's question? Are you making a contrary to argument also or not? No. Just an unreasonable application? Correct. Thank you, counsel. At this time, if counsel for the appellee will please introduce herself on the record. Good morning. Assistant Attorney General Eva Badway for the respondent. May it please the Court. This Court should not construe the petitioner's November 30, 2021, motion for an extension of time to be a timely notice of appeal. The petitioner had 30 days to file a notice of appeal from the district court's November 3, 2021, memorandum in order denying the habeas petition. The petitioner failed to do so. In the memorandum in order denying the habeas case, the district court indicated that she was not inclined to grant a certificate of appealability. However, she gave the petitioner 30 days to file a request for a certificate of appealability. On November 30, 2021, petitioner's counsel simply filed a motion for an extension of time to be a timely notice of appeal. Now, in Campidi v. Madison, this Court bypassed the question about whether a motion for an extension of time can be construed as a timely notice of appeal and instead focused the analysis on the motion for appointment of counsel because they said in a pro se petitioner's motion for appointment of counsel, the petitioner made clear that he wanted to appeal. And so for that reason, they construed the motion for appointment of counsel. But all it said in that motion was that he wanted counsel for the appeal. That's correct. And that was deemed to be enough. So this person says, I want the time to finish my memo for the appeal. How are those two different functionally? Well, it was a pro se petitioner in the case of Campidi v. Madison. Smith doesn't suggest that the inquiry is different if it's pro se or not. No, Smith does not. However, some of the other courts that have. So the Third Circuit said that their local rules give more leeway to pro se petitioners. So that is one factor that is different from Campidi than this case. There was counsel on the other side. And the way that this court chooses to read the motion for an extension of time, you can clearly see all she said is that she wanted extension of time from a court set deadline because she has a busy trial schedule. To finish the memo, right? That's correct. But we don't know for certain. But Judge Casper, it seems to me that the way Judge Casper put it, it sort of signaled to counsel that she was willing to reconsider whether her statement that she was disinclined to grant one meant that she was still open to it. Agreed, Your Honor. In fact, she did grant one. So I agree with that assessment. Okay. And so what counsel was saying, given how the court had signaled it, is that I need a little bit more time to file a memo to appeal. Well, what she said is I need more time to file a memorandum in support of a certificate to request a certificate of appealability. Right. That's what she said. That doesn't necessarily mean that she will file it. But in Campidi, it didn't say when I said I want counsel for the appeal, it didn't say I'm going to file an appeal. But it's a pro se petitioner clearly saying that he wants to appeal. That's why he wants counsel. Why does it clearly say he wants to appeal? All he said is I want counsel for the appeal. Because if you want counsel for the appeal, you want to appeal. Well, if I want to finish my memo, I think I want to file it. Well, if you want to file your memo, you should say that I plan on appealing. But the counsel should have made it clear. I'm being serious. One person says I'd like counsel for the appeal. We say that's fine. That shows you want to appeal. Right. Another person says I want time to finish my memo to file the certificate. Now we're going to say that shows you don't want to file the certificate? Well, Your Honor, what I would do is I would refer back to Thomas, and I would refer to the difference between the two documents in the record appendix. At 107, we have a clear example of a notice of appeal. Counsel here knows how to file a notice of appeal. She does everything exactly in compliance with the rules. I know, but Campidi could say the same thing. Well, the difference between, again, I go back. If you want to say that everything turns on pro se versus not, I get that. Let's say it doesn't. Okay. What then is the State's position? How do we distinguish Campidi from this case, assuming that the distinction is not between a pro se litigant and a non pro se litigant? Then you have to go back to Thomas, which they chose not to decide. And instead of using the motion for an extension of time. Do you agree with your opposing counsel that Thomas itself is not a categorical holding, but instead turned on the nature of that motion? No, I do not. I believe that that is a categorical. Okay. If it's a categorical motion, then let me ask you, what do we make of our precedent if your reading of Thomas is right? Because it would suggest that Thomas would say that in a case in which I file an extension for time for notice of appeal, and in the request for it I say I'm out of the country dealing with a health crisis, can I have five more days, because I intend to file the notice. Your position would be that fails to give notice. Correct? No, I wouldn't say that. Well, then you're saying Thomas is not a categorical rule. What I'm saying about Thomas is that I don't think it would still allow in that instance. So you would say even in that instance, we would treat that as not the functional equivalent of a notice of appeal. Correct. Yet in Campidi, when all I do is request an appointment of counsel without even saying I intend to appeal, we treat that as a notice of appeal. What would be the logic of our precedent having those two positions? Your Honor, I'm not saying that there's a logical connection. Then maybe under the law of the circuit doctrine, what that suggests is Thomas really doesn't survive Smith given the way we construed Smith in Campidi. I don't think that that would be an illogical result for you to come to that conclusion. That would suggest there is jurisdiction. Because Thomas wouldn't survive Smith, Campidi would be the reigning precedent, Campidi is hard to distinguish from this case, therefore, except on the pro se ground. If we don't think that's a good ground, then there would be jurisdiction because this would be the functional notice of appeal. Yes, Your Honor, that is true. If Campidi is the law of the circuit and you don't think the pro se status, then yes, I would agree with you that that's true. Are you saying the pro se status should be dispositive? I think what Campidi did was set up a very general fact and circumstances kind of analysis. I think that in the facts and circumstances of this case, where Petitioner had counsel that the fact that Petitioner was not pro se should be the factor that says that this court does not have jurisdiction. That's my argument. If this court... But it sounds like you're saying that pro se should be dispositive. For this case, in the facts and circumstances of this case, yes, I do think that, Your Honor. I think the fact that there was counsel would deny this court jurisdiction. And the logic is something like if the idea is notice, there's too little reason to think that a counseled litigant is actually filing a notice of appeal right now when there's so many options for how they could have manifested that. That is correct. And instead just filed a request for extension, so why should I treat that as the notice? That is correct, Your Honor. Okay, I get it. If there are no further questions on the jurisdictional question, I'll move along to the merits where the Massachusetts Supreme Judicial Court properly decided that there was no due process violation. And because we're here on habeas relief, the standard is whether the Massachusetts Supreme Judicial Court decision is contrary to or an unreasonable application. Now, I want to point out to the court that below, petitioner's counsel made the argument that the Massachusetts Supreme Judicial Court decision was contrary to federal law. And then on appeal, they expanded their argument to an unreasonable application of federal law. Well, the district court seems to have decided on both grounds, correct? That is correct, Your Honor. Our case law says that if that happens, then on appeal you can address the court's basis. That is correct, Your Honor. What you argued below. That is correct, Your Honor. So they're doing that. Okay. Well, still, the SJC's decision was not contrary to or an unreasonable application of federal law. As I said, the petitioner challenges the admission of a recording three ways in the SJC. He argued the recordings were admitted in error because the petitioner's denials, that there was a lack of evidence of racial animus and of the prejudicial effect. And I want to emphasize that during the interview with the police, when the petitioner, when shown the photograph and asked whether they had ever met, responded that the victim looked like an N-word. It was not a denial. So let me ask you this. I mean, I take their argument to be that the SJC made a determination that the evidence was relevant and thus admissible to show motive, but that the Supreme Judicial Court didn't give any kind of discussion to whether it was unduly prejudicial. And therefore, because they are saying it is, from their perspective, not doing so was an unreasonable application of our due process law. Okay. First of all, Your Honor, I'm going to point the court to Harrington v. Richter, which says that federal courts can't tell state courts how to write their decisions. And the reason why the evidence came in, I think all evidence is prejudicial to a certain degree, right? I mean, if it didn't have any weight, why would it be admitted? They cannot tell the SJC whether or not to engage in analysis about prejudice. But I would say that the SJC did talk about how the trial judge did an individual voir dire, and I think that goes to the point of prejudice. In footnote 1, the SJC says, The judge inquired of each prospective juror. The defendant is Hispanic. The alleged victim was African American. You'll also hear evidence that the defendant allegedly referred to the victim as the N-word. Do you have any feelings based on race that might affect your ability to be fair and impartial? I think that goes to a prejudice analysis, Your Honor. And I think that the SJC did effectively analyze the due process claim and reasonably analyzed the due process claim, and that the district court correctly denied habeas relief. I mean, I guess one way to think about it is, as you say,  the inquiry, I assume you're accepting that the due process inquiry turns on some balance of the prejudicial effect versus the relevance of the material? Correct. And so it's hard to read the SJC's decision as not a conclusion that there is quite strong relevance reasons to admit the evidence. Correct. So I guess the only remaining question is, Is there some possibility that in the face of the SJC having taken that position, it would be unreasonable to conclude that the prejudicial effect didn't outweigh that relevance? No, Your Honor. This type of evidence is used to show motive. And that doesn't outweigh it. And the SJC's analysis... Was the prejudice argument made to the SJC? Yes. And so your idea under Richter is that there's just an implicit finding that the prejudice did not outweigh it to such an extent as to create a due process problem? Well, Your Honor, I'm not going to say it's implicit. I mean, I think the SJC took it on. I took the argument head-on. I think they explained that the evidence was admitted for motive and that it was properly admitted. And they talked about what the trial judge did to mitigate against prejudice with his individual voir dire. So I don't think it was implicit. I think the SJC's analysis was reasonable. If there are no further questions, I will rest on my brief, and I urge this Court to affirm the denial of habeas relief. Can I just ask you one question? Sometimes we take hypothetical jurisdiction of cases where there's not an Article III jurisdictional problem, if the merits are thought to be easy enough and would not be favorable to the person who wanted us to take jurisdiction. Would the government have any problem with us doing it that way if we affirmed on the merits by just assuming jurisdiction? I don't have a problem with that, Your Honor, with that hypothetical question. I have not talked to anyone. But my own question would be I would not have a problem with that. So thank you. Thank you, counsel, at this time. Counsel for the appellant, please reintroduce yourself on the record. She has a two-minute rebuttal. Thank you. Emma Quinn, judge, for Mr. Cruzado. Just briefly on the jurisdictional issue, I don't think the distinction turns on pro se or not. The Supreme Court's entire Smith v. Barry decision does not rely on that body of case law in any way. It relies on Rule 3, and so I think you look at the liberal construction of Rule 3 when you're thinking about functional equivalence. Just on that point, which I take that point that there wouldn't be just a global distinction between things so that the liberal construction applies even in counsel cases, I take the State's argument to be that if it is a fact-intensive inquiry about whether the face of the document gives the notice, manifests the intent for notice, why wouldn't one of the factors that might be relevant, whether it was counseled or not, just in terms of if I looked at the face of this document, would that manifest the intent? So that even if we concluded here it wouldn't, that wouldn't be the case if it was an uncounseled filing. I think certainly you can give the latitude to pro se litigants that there's a body of case law around that and courts have done that. I'm not aware of a case, I'm just trying to think back through the jurisdictional cases, I'm not aware of a case where the thumb has come down on the scale the other way, where you're using it against someone that they're counseled, as long as you otherwise meet the requirements of Rule 3, which I think you do here. So I don't think you get to punish someone for being counseled, but I think maybe you can give extra latitude in some cases and that's what you see in the case law and that's what there's a body of law around. Going to the merits of the claim, I just want to reiterate a couple of things that I think are distinguishing features in this case and why it makes the SJC's decision unreasonable. I think the N word is, we all know it's incredibly inflammatory, right? There's no way to overstate the inflammatory impact of that. And that makes it different from some of the other due process habeas cases this court has looked at. It's injecting something new into this case. It's injecting racial animus into a case where it's not already there. In cases like James... But the problem is all of those same sentences could be used to explain why it might be very relevant to motive, that he chose to use it. That's sort of what that footnote reads to me as saying. So, that, why it might be relevant to motive, the thing is, I don't see any cases where a court has decided that that word alone is enough for motive, right? If you look at the cases that are cited, if you look at Bishop, it's criminal responsibility and motive. If you look at people v. Mina, it's a specific defense and identity. Quartermain is the one case where it seems like they do accept it only for motive, but again, I think that one has the dated pronouncements. What I was saying about injecting racial animus here and making what's different from Conningford and Janes and Lyons and those other cases is, in those cases, the other acts evidence that is being contested as a due process violation is more of the same, right? You're accused of abusing boys and the other acts evidence is more of the same. You're accused of shaking a baby and it's pictures of a shaken baby. This is bringing something entirely new and incredibly inflammatory into the case. I don't understand that argument because the victim was an African-American and you have the statement from, is it Ms. Matias, the girl? Ms. Matias, yep. Specifically indicating that in a conversation, she says that your client had an encounter with an African-American male in his apartment, woke up, found him fondling and put him in a chokehold. That is evidence that an encounter with an African-American occurred. The reasonable inference is that it is the decedent and it goes to motive of not only homophobia, as you indicate, but also racial animus. So I just didn't quite understand your argument that it was interjecting something that wasn't already there. Well, I think it's interjecting animus. Ms. Matias' testimony when she's asked, the Commonwealth has to say, and did he identify the person as black and she says yes and she goes on to say, so in that context it's used to identify and to corroborate the Commonwealth story that the defendant was there and that the murder occurred, but not as evidence of racial animus. The racial animus piece comes from the introduction of the recording in which he uses the N-word when shown a photo, and there was a reference to it not being a denial. He does deny multiple times in that recording that he knows the individual, just to be clear about the record. So it's not, I mean, race is present in the sense that the defendant is a black man and there is discussion about the fact that he's a black man and he's described that way, but racial animus... And the defendant was at some point with this black man. That's the allegation, yes. Well, that's the evidence. Yes. Before you sit down, and I understand the aim here is to have the petition granted, not denied, but as between having it denied on jurisdictional grounds and having it denied on the merits with jurisdiction being assumed, are there any stakes for your client on our choice in that regard in terms of what it might mean for race judicata or second and successive or anything like that? I would assume it would be better for my client to have it addressed on the merits, certainly because in these cases there's an obligation, for example, to file a cert petition after the termination of any representation, and so there are issues that you would address on the merits that would be different from the jurisdictional issues, and I can imagine what some of those would be. Thank you. Thank you, counsel. That concludes argument in this case.